IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

    Plaintiff,

v.                                    Civil Action No. 3:12cv781

MICHAEL D. DAVIS and
MICHELLE M. DAVIS,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on plaintiff Federal National Mortgage Association's ("FNMA" or "Fannie Mae") MOTION TO REMAND (Docket No. 4). For the reasons set forth below, the motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2012, OneWest Bank, FSB ("OneWest") foreclosed on property mortgaged by Michael and Michelle Davis (collectively, the "Davises"). Notice of Removal (Docket No. 1) at ¶ 5. Subsequently, OneWest sold the property to FNMA. Id. As a result of the Davises' refusal to vacate the property, FNMA initiated an unlawful detainer action in the General District Court of Goochland County on October 5, 2012. Pl. Mem. in Supp. of Mot. to Remand ("Mem. in Supp.") (Docket No. 5) at 1. On October 31, 2012, the Davises, proceeding pro se, filed a Notice

of Removal to remove the unlawful detainer action to this Court. Id. On November 5, 2012, FNMA filed its Motion to Remand (Docket No. 4) and Memorandum in Support thereof (Docket No. 5). The Davises opposed (Docket No. 11). FNMA replied (Docket No. 12).

## DISCUSSION

Fannie Mae asserts that this Court lacks subject matter jurisdiction over this action and asks that it be remanded to the General District Court for Goochland County. Mem. in Supp. at 1. In their Notice of Removal (Docket No. 1) and in their Opposition to the Motion to Remand (Docket No. 11), the Davises assert several bases for jurisdiction. Namely, they argue that jurisdiction is proper under 28 U.S.C. § 1332 (diversity of parties) as well as under 28 U.S.C. § 1331[1] (federal question jurisdiction). Specifically, the Davises assert that this action implicates the Protecting Tenants at Foreclosure Act, 12 U.S.C. § 5220; the Fifth Amendment of the United States Constitution; the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; and the

---

[1] In their Notice of Removal, defendants cite to 28 U.S.C. § 1348, which grants original jurisdiction to the Federal courts for any action "commenced by the United States . . . against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter." See Notice of Removal ¶ 10. It is not clear to the Court how this statute could be implicated in this action, as neither the United States nor the Comptroller of the Currency is a party to this action. Accordingly, the Court assumes that this is a typographical error.

Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961-68. The Davises also suggest that the authorizing statute for FNMA confers federal subject matter jurisdiction for any action to which FNMA is a party. Finally, the Davises assert that jurisdiction is appropriate based on "practical and procedural" concerns. Opp. at 10. The Court will consider these alleged jurisdictional predicates in turn.

As a result of the "undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction," "a party seeking to adjudicate a matter in federal court must allege, and when challenged must demonstrate, the federal court's jurisdiction over the matter." Strawn v. AT&T Mobility, LLC, 530 F.3d 293, 296 (4th Cir. 2008). It is well-settled that "removal jurisdiction is not a favored construction," and, therefore, the Court "must construe it strictly in light of the federalism concerns inherent in that form of federal jurisdiction." In re Blackwater Security Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006). Although a defendant is only required to allege federal jurisdiction in his notice of removal, "when removal is challenged, the removing party bear[s] the burden of demonstrating that removal jurisdiction is proper." Strawn, 530 F.3d at 297 (emphasis in original). However, "this burden is no greater than is required to establish federal jurisdiction as alleged in a complaint."

3

Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). Nevertheless, "if federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

## Jurisdiction under 28 U.S.C. § 1332

Title 28, Section 1332 of the United States Code grants original jurisdiction to the district courts for "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and that are, inter alia, "between citizens of different States." 28 U.S.C. 1332(a)(1). The Davises assert that diversity jurisdiction exits in this action because the Davises are citizens of Virginia while Fannie Mae is a "federally-chartered corporation whose main office in located in the District of Columbia." Notice of Removal ¶ 10.[2] The Davises further assert that the amount in controversy requirement is met because the "Plaintiff is attempting to use this action as a means of taking possession of Davis' property, which Plaintiff has affirmed is worth in excess of $400,000." Id. at ¶ 12. Fannie Mae concedes the question of citizenship but argues that removal in unavailable to the Davises because, as citizens of the state in which the state court action was commenced, they

---

[2] Fannie Mae's charter provides that it "shall be deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation." 12 U.S.C. § 1717(a)(2)(B). The Davises' citizenship is not disputed.

are prohibited from removing the action to federal court and, further, that the amount in controversy does not exceed $75,000. Mem. in Supp. at 2.

The removal statute provides that, generally speaking, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added). However, the statute further provides that "a civil action otherwise removable solely on the basis of . . . [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Because the Davises are both citizens of Virginia, the state in which the action was originally brought, removal is not proper under the theory of diversity jurisdiction.[3] Accordingly, the Court need not address

---

[3]  In their opposition, the Davises stress that they are not asserting jurisdiction "solely" on the basis of diversity jurisdiction and that, therefore, the limitations of § 1441(b)(2) do not apply. Opp. at 7. The Davises likely misunderstand the effect of this provision. It is not necessary to combine diversity jurisdiction and federal question jurisdiction. If federal question jurisdiction exists, the citizenship of the parties is irrelevant and nothing more need be established. If there is no federal question, then removal must be predicated on diversity. It is only in this latter

whether the Davises have adequately alleged the amount in controversy. If this Court is to have jurisdiction over this action, it must come from another source.

## "Federal Question" Jurisdiction

The Davises further argue that jurisdiction exists under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Davises assert that the action implicates several federal statutes, including the Truth in Lending Act and the RICO Act, Notice of Removal ¶ 11, as well as the Protecting Tenants at Foreclosure Act of 2009. Opp. at 2. They further claim that this Court has jurisdiction over "all cases in which FNMA is a party." Notice of Removal ¶ 3 (citing Perelli Armstrong Tire Corp. v. Fed. Nat'l Mortgage Ass'n, 534 F.3d 779 (D.C. Cir. 2008)).

### Federal Defenses and Counterclaims

Following the filing of their Notice of Removal, the Davises filed a thirty-page Counterclaim (Docket No. 6) asserting claims against FNMA as well as OneWest Bank, F.S.B.; Samuel I. White, P.C.; Eric White; Ronald J. Guillot, Jr.; and

---

situation that § 1441(b)(2) is implicated, and removal unavailable. Whether there is federal question jurisdiction will be discussed below.

Amy E. Miller.[4] In addition to a variety of state law claims, the Davises assert that FNMA's and counterclaim-defendants' violated the federal Truth in Lending Act and they allude also to alleged violations of the Racketeer Influenced and Corrupt Organizations Act. In their Notice of Removal, the Davises suggest that these counterclaims raise federal questions and bestow jurisdiction on this Court. Notice of Removal ¶ 11. In response, FNMA argues that those so-called "claims" are "affirmative defenses" or counter-claims, but that, either way, they cannot serve as a basis for federal jurisdiction.[5]

The Davises also assert that this action implicates the Home Owners' Loan Act, the Protecting Tenants at Foreclosure Act of 2009, and the Fifth Amendment of the United States

---

[4] As far as the Court can determine, OneWest Bank, F.S.B., was the purported holder of the note, having acquired it in 2009 following the failure of the Independent National Mortgage Corporation. Samuel I. White, P.C. served as trustee during the foreclosure sale and currently serves as counsel to FNMA. Messrs. White and Guillot are attorneys with Samuel I. White, P.C.. Ms. Miller is an attorney with McGuireWoods LLP, who appears to have served as counsel for OneWest Bank.

[5] Although the claims were filed as "counterclaims," much of the Davises' filing is dedicated to the general proposition that FNMA's and the counterclaim defendants' nefarious actions amounted to a conspiracy to fraudulently purport to have conducted a foreclosure and obtained title to the property in question. While these assertions have the general appearance of counterclaims, the law is somewhat unsettled on whether or not the validity of title can be challenged as a defense in an unlawful detainer action. See Seitz v. Fed. Nat'l Mortg. Ass'n., __ F. Supp. 2d __, 2012 WL 5523078 at *8 (E.D.Va. Nov. 14, 2012) (noting that, under Virginia law, validity of title might be available as a defense in an unlawful detainer action).

Constitution and that those federal statutes may explicitly provide them with a defense to the unlawful detainer action. Indeed, both the Davises and FNMA expend considerable time discussing the argument that the Protecting Tenants at Foreclosure Act may provide some protection for the rights of the Davises' farm animals who stand to be evicted, along with the Davises, in the event that FNMA prevails. See Opp. at 8; Pl. Reply at 2-3; Def. Sur-Reply at 4-5.

Fortunately, the Court need not undertake an analysis of the underlying claims respecting the residential status and general usefulness of farm animals. Neither is it necessary to attempt to resolve the Davises' counterclaims or defenses against FNMA and the counterclaim defendants. It is well-settled that for an action to "arise" under federal law, the federal question "must be an element, and an essential one, of the plaintiff's cause of action." Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 127 (1974) (internal quotations and citations omitted). Indeed, the federal questions "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Gully v. First Nat'l Bank, 299 U.S. 109, 113 (1936). A federal defense cannot serve as the basis for federal jurisdiction. Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) ("Thus, it is now settled law that a case may not be removed to federal court on the basis of a

federal defense.")(emphasis in original). Similarly, federal jurisdiction cannot be predicated on a counterclaim. <u>Holmes Group v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 831 (2002)(holding that "a counterclaim – which appears as part of the defendant's answer, not as part of the plaintiff's complaint – cannot served as the basis for 'arising under' jurisdiction.")

### **Fannie Mae's Charter**

The Davises final asserted basis for federal jurisdiction comes from FNMA's charter itself, which authorizes FNMA to "sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). The Davises assert that this provision grants the district court original jurisdiction over any action to which FNMA is a party.

Congress enacted one of the first "sue and be sued" clauses when it chartered the First Bank of the United States in 1791. Specifically, the statute allowed the Bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever." <u>Bank of United States v. Deveaux</u>, 9 U.S. (5 Cranch) 61, 85 (1809), <u>overruled in part by</u> <u>Louisville, Cincinnati & Charleston R.R. Co. v. Letson</u>, 43 U.S. 497 (1844). In <u>Deveaux</u>, the Supreme Court of the United States held that the language of the statute "evince[d] the opinion of [C]ongress, that the right to sue does

not imply a right to sue in the courts of the union, unless it be expressed." Id. at 86.

In response to the decision in Deveaux, Congress chartered the Second Bank of the United States in 1809 and this time made reference to the federal courts in the sue-and-be-sued clause. The provision authorized the Bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, and in any Circuit Court of the United States." Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 817 (1824). When the petitioners in Osborn argued that this language was not a grant of original jurisdiction to the federal courts, the Supreme Court replied with the following:

> These words seem to the Court to admit of but one interpretation. They cannot be made plainer by explanation. They give, expressly, the right "to sue and be sued," "in every Circuit Court of the United States," and it would be difficult to substitute other terms which would be more direct and appropriate for the purpose.

Id.

One-hundred and twenty years later, the Court interpreted another sue-and-be-sued provision in D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp., 315 U.S. 447 (1942). The clause provided that the FDIC could sue and be sued "in any court of law or equity, State or Federal," id. at 467-68, and the Court

found that the language provided a sufficient basis for federal jurisdiction, id. at 455.

Just nine days after D'Oench, the Fourth Circuit heard argument respecting whether the federal courts lacked jurisdiction, notwithstanding a clause in the National Housing Act authorizing the Housing Administrator to "sue and be sued in any court of competent jurisdiction, State or Federal." Ferguson v. Union Nat'l Bank, 126 F.2d 753, 756 (4th Cir. 1942). Like the Supreme Court, the Fourth Circuit found the argument easily dismissible. It reasoned that Congress could not have intended to allow suits against the Housing Administrator for under $10,000 to be brought only in state courts or the Court of Federal Claims. Id.

The Supreme Court again addressed a "sue-and-be-sued" clause in American National Red Cross v. S.G., 505 U.S. 247, 257 (1992), in which the Court held that the sue-and-be-sued clause in the Red Cross's charter granted original jurisdiction to the federal courts. The provision empowered the Red Cross "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." Id. at 251. In so doing, the Court held that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." Id. at 255.

11

Notwithstanding the seemingly bright-line rule in <u>Red Cross</u>, lower courts have since struggled with determining whether modifications or additions to a federal corporation's sue-and-be-sued provision qualify the rule, notwithstanding statutory reference to the federal courts. <u>Compare</u> <u>Rincon Del Sol, LLC v. Lloyd's of London</u>, 709 F.Supp.2d 517 (S.D. Tex. 2010), <u>Knuckles v. RBMG, Inc.</u>, 481 F.Supp.2d 559 (S.D.W. Va. 2007), and <u>Fed. Nat'l Mortgage Ass'n v. Sealed</u>, 457 F.Supp.2d 41 (D.D.C. 2006), <u>overruled by</u> <u>Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines</u>, 534 F.3d 779 (D.C. Cir. 2008), <u>with</u> <u>Mendoza v. Fed. Nat'l Mortgage Ass'n</u>, 469 F. App'x 544 (9th Cir. 2012), and <u>Pirelli</u>, 534 F.3d 779. The source of this confusion is primarily two-fold: (i) the Supreme Court's use of the discretionary term "may" in <u>Red Cross</u>, and (ii) Congress's addition of the words "of competent jurisdiction" in certain sue-and-be-sued provisions.

As one district court points out, the Supreme Court's use of "may" instead of "shall" or "must" shows that "<u>Red Cross</u> does not compel the conclusion that [FNMA's] charter confers federal jurisdiction; rather, it simply acknowledges that [FNMA's] charter could possibly be read to confer federal jurisdiction insofar as the charter mentions the federal courts." <u>Knuckles</u>, 481 F.Supp.2d at 562; <u>see also</u> <u>Pirelli</u>, 534 F.3d at 796 (Brown, J., concurring in judgment) (emphasizing this point).

12

Additionally, FNMA's sue-and-be-sued provision differs from the Red Cross's provision in that it contains the phrase "of competent jurisdiction." See § 1723a(a). Few decisions have offered helpful analysis as to the meaning of this additional language as used in the FNMA provision, and those that have are split as to the correct interpretation. Compare Pirelli, 534 F.3d at 785, with Knuckles, 481 F.Supp.2d at 562-65. Nevertheless, courts agree that the phrase is not devoid of meaning. See Pirelli, 534 F.3d at 785 ("Applying the Red Cross rule to the [FNMA] statute thus does not render the words 'of competent jurisdiction' meaningless."); FNMA v. Sealed, 457 F.Supp.2d at 44 (citing TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001)) (applying the "cardinal principle of statutory construction . . . that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"). Against this background, it is time to turn to Davis' argument and the Motion to Remand.

The first step in making this determination is to decide whether the Fourth Circuit's decision in Ferguson is applicable, and therefore binding, in this case. The District Court for the Southern District of West Virginia found that it was not. Knuckles, 481 F.Supp.2d at 564. Understanding that conclusion, however, requires a review of that court's analysis.

In Knuckles, FNMA had filed an eviction action against Mr. and Mrs. Knuckles in Mercer County, West Virginia. Id. at 561. The Knuckles filed a counterclaim against FNMA alleging violations of the West Virginia Consumer Credit and Protection Act, breaches of fiduciary duty, conspiracy, and fraud. Id. Upon being served, FNMA sought removal to federal district court, arguing that its charter conferred original jurisdiction on the district court to hear the case in accordance with Red Cross. Id. at 561-62. The court rejected FNMA's argument and concluded that, "[f]or the phrase 'any court of competent jurisdiction' to have any meaning, it should be read as differentiating between state and federal courts that possess . . . an independent basis for jurisdiction, from those that do not." Id. at 563.

In Knuckles, the court reached that conclusion for three reasons. The first was the "well-reasoned decision . . . in [FNMA] v. Sealed," as discussed below. Knuckles, 481 F.Supp.2d at 565; see also discussion infra p.11. Second, the court was persuaded by a number of circuit court opinions interpreting the phrase "of competent jurisdiction" as found in 12 U.S.C. § 1702 (dealing with the Secretary of Housing and Urban Development) as requiring an independent jurisdictional basis. See Knuckles, 481 F.Supp.2d at 563-64 (citing C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 118 (2d. Cir. 1990); Indus. Indem.,

14

Inc. v. Landrieu, 615 F.2d 644, 647 (5th Cir. 1980); DSI Corp. v. Secretary of Housing & Urban Development, 594 F.2d 177, 180 (9th Cir. 1979); Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 (8th Cir. 1978); Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974). This particular line of reasoning is less persuasive given the Fourth Circuit's interpretation of § 1702 as sufficient to confer federal jurisdiction. See Ferguson, 126 F.2d at 756 (citing 12 U.S.C. § 1702) ("We think there can be no question but that the court had jurisdiction of the cause. It is specifically provided that the Administrator in his official capacity may 'sue and be sued in any court of competent jurisdiction, State or Federal.'"). Ferguson undercuts the Southern District of West Virginia's reliance on the decisions of other circuits. Either interpretations of § 1702 are distinguishable from interpretations of § 1723a(a), or they are indistinguishable in which case the Fourth Circuit precedent is binding. This question can be answered by looking at the third basis for the holding in Knuckles.

In reaching its conclusion, the Knuckles court examined the legislative history behind the "competent jurisdiction" language of § 1723a(a). Knuckles, 481 F.Supp.2d at 564. This is the most persuasive predicate for the conclusion in Knuckles that the phrase qualifies the otherwise applicable Red Cross rule by requiring an independent ground for jurisdiction. Before Red

15

Cross, the Supreme Court already had put Congress on notice that reference to the federal courts in a statute of corporate charter would confer federal jurisdiction. See D'Oench, 315 U.S. at 467-68 (interpreting the FDIC charter). Five years after D'Oench, Congress copied the language from the FDIC charter for use in the Red Cross charter, presumably knowing its significance. See Morissette v. United States, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art . . ., it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."). The Supreme Court reaffirmed this notion when it decided Red Cross in 1992:

> In expressly authorizing the [Red Cross] to sue and be sued in federal courts, using language resulting in a "sue and be sued" provision in all relevant respects identical to one on which we based a holding of federal jurisdiction just five years before, the provision . . . suffices to confer federal jurisdiction.

Red Cross, 505 U.S. at 257. It follows then that, if Congress had wanted to confer federal jurisdiction on FNMA, it would have simply used the same sue-and-be-sued provision for a third time. But it did not; instead, it added the phrase "of competent

jurisdiction" to FNMA's charter in 1954.   See Pub.L. No. 83-560, § 201, 68 Stat. 590, 620 (1954).[6]

The same line of reasoning also explains why interpretations of the "competent jurisdiction" language in the § 1702 provision are inapplicable to interpretations of the same language as used in § 1723a(a).   Congress enacted § 1702 in 1934 and amended it to include "of competent jurisdiction" in 1935 – seven years before the Court's holding in D'Oench.   See Act of Aug. 23, 1935, ch. 614, § 344(a), 49 Stat. 722 (codified as amended at 12 U.S.C. § 1702 (2006)).   At that time Congress used the phrase without having been informed by the Supreme Court of the significance of the phrase with respect to federal jurisdiction.   That circumstance is to be contrasted with Congress's inclusion of the phrase in FNMA's charter, which Congress added after D'Oench.   It cannot be said that Congress's intent with respect to its use of the phrase remained the same in light of the intervening Supreme Court decision.   This explains two things: the Knuckles court incorrectly relied on

---

[6] It is noteworthy that Congress has not added the words "of competent jurisdiction" to Freddie Mac's charter.  See 12 U.S.C. § 1452(c) (authorizing Freddie Mac "to sue and be sued, complain and defend, in any State, Federal, or other court").  Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius, __ U.S. __, 132 S.Ct. 2566, 2583 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.").

circuit court interpretations of § 1702, but more important, the Fourth Circuit's holding in Ferguson is not applicable here.

In rejecting the application of the Red Cross rule to § 1723a(a), the Knuckles court aligned itself with the District of Columbia in FNMA v. Sealed.   In that case, the court held that the words "of competent jurisdiction" as used in § 1723a(a) necessitate an independent basis for federal jurisdiction.   FNMA v. Sealed, 457 F.Supp.2d at 44.   As the court explained, "[f]or the phrase 'any court of competent jurisdiction, State or Federal' to have any reasonable meaning, it must be read to distinguish state and federal courts whose jurisdiction is 'competent' from state and federal courts whose jurisdiction, in a particular case, is not 'competent.'"   Id.

Three years ago, the Southern District of Texas endorsed the reasoning in Knuckles and FNMA v. Sealed.   Rincon, 709 F.Supp.2d at 523.   It noted that "the district courts that have most thoroughly analyzed this issue have found that the [FNMA] charter's 'sue-and-be-sued' clause merely allows that plaintiffs may sue [FNMA] in federal court but that [FNMA's] existence as a defendant does not compel removal to federal court."   Id. (citing Knuckles, 481 F.Supp.2d at 562-66; FNMA v. Sealed, 457 F.Supp.2d at 46-47).   While incorporating the reasoning of Knuckles and FNMA v. Sealed in its opinion, the Rincon court noted that one question remained unanswered: why would Congress

18

add the words "of competent jurisdiction" rather than simply deleting the word "Federal"? Rincon, 709 F.Supp.2d at 524; see also Pirelli, 534 F.3d at 786 (posing the same question). This query only makes sense on the premise that adding the words "of competent jurisdiction" and deleting the word "Federal" have equal effect on federal jurisdiction, namely eliminating it. As the court pointed out, however, "elimination of federal jurisdiction could not reasonably be Congress's intent." Rincon, 709 F.Supp.2d at 524. Instead, the additional language was meant to qualify federal jurisdiction - which would have otherwise remained unqualified under the Red Cross rule - by requiring "the predication of federal jurisdiction upon some additional basis." Id.

In contrast to Knuckles, FNMA v. Sealed, and Rincon, the D.C. Circuit has held that § 1723a(a)'s inclusion of the phrase "of competent jurisdiction" did not negate the Red Cross rule and that, as a matter of law, statutory reference to the federal courts creates original jurisdiction in the district courts.[7] Pirelli, 534 F.3d at 787 ("[W]e think it abundantly clear that

---

[7] As Judge Brown points out in the concurrence, this type of strict adherence to Red Cross produces potentially absurd results. Pirelli, 534 F.3d at 795 (Brown, J., concurring in judgment). For instance, the provision might read "FNMA may sue and be sued in federal court only if another statute independently confers subject-matter jurisdiction." Id. In this example, strict adherence to Red Cross clearly would be contrary to Congressional intent. Id.

19

Congress in 1954 would not have thought or intended the words 'of competent jurisdiction' to negate automatic federal jurisdiction for [FNMA] cases."); accord Mendoza, 469 F. App'x at 545 (offering no analysis, but nonetheless affirming that § 1723a(a) grants subject matter jurisdiction to federal district courts), aff'g Orellana v. Deutsche Bank Nat'l Trust Co., No. JS-6 (C.D. Cal. May 17, 2010) (order granting in part motion to dismiss).  But see Pirelli, 534 F.3d at 795 (Brown, J., concurring in judgment) ("I would apply this silly test if Red Cross actually created it.  But Red Cross did no such thing."). Nevertheless, the Pirelli court still needed to supply a meaning for the phrase so as not to render it superfluous.  In this vein, it ascribed a four-pronged meaning to the words.

> The words "of competent jurisdiction" help clarify that: (i) litigants in state courts of limited jurisdiction must satisfy the appropriate jurisdictional requirements . . . ; (ii) litigants, whether in federal or state court, must establish that court's personal jurisdiction over the parties . . . ; (iii) litigants relying on the "sue-and-be-sued" provision can sue in federal district courts but not necessarily in all federal courts . . . ; and (iv) where the Tucker Act otherwise might funnel cases to the Court of Federal Claims, the federal district courts still possess jurisdiction . . . .

Pirelli, 534 F.3d at 785 (citations omitted). Of the district courts decisions herein discussion, Rincon was the only one to explicitly reject Pirelli, see Rincon, 709 F.Supp.2d at 523 (Knuckles and FNMA v. Sealed were decided before 2008). Even so,

the _Rincon_ court failed to address specifically the four-faceted reasoning in _Pirelli_.   In holding that the words "court of competent jurisdiction" did not negate the _Red Cross_ rule, the _Pirelli_ court offered four alternative reasons. _Pirelli_, 534 F.3d at 785.

First, the _Pirelli_ court found that "of competent jurisdiction" requires litigants in state courts of limited jurisdiction to satisfy the appropriate jurisdictional requirements. _Pirelli_, 534 F.3d at 785 (citing _Osborn_, 22 U.S. (9 Wheat.) at 817-18).   The court's reliance on _Osborn_ is misplaced because the sue-and-be-sued provision interpreted by the Supreme Court in _Osborn_ was materially different than the FNMA provision, because in _Osborn_, the Bank's chartering statute allowed the Bank "to sue and be sued . . . in all State courts having competent jurisdiction, and in any Circuit Court of the United States." _Osborn_, 22 U.S. (9 Wheat.) at 817.   The placement of the comma between "competent jurisdiction" and "in any Circuit Court of the United States" clearly indicates that the former words do not apply to the latter federal entities. Thus, the Supreme Court's holding in _Osborn_ that the provision "give[s], expressly, the right 'to sue and be sued,' 'in every Circuit Court of the United States,'" _id._ at 817, neither implicates the critical phrase here nor supports the D.C. Circuit's proposition.

Next, the _Pirelli_ court found that the phrase required litigants to establish a court's personal jurisdiction over the parties. _Pirelli_, 534 F.3d at 785 (citing _Blackmar v. Guerre_, 342 U.S. 512, 516 (1952); _United States v. Morton_, 467 U.S. 822, 828 (1984)).  Although the Supreme Court in _Morton_ opened the door to the possibility of interpreting the phrase to require personal jurisdiction, it ultimately held that the words required only subject matter jurisdiction with respect to 42 U.S.C. § 662(e).  _Morton_, 467 U.S. at 836.  Wholly apart from whether "competent jurisdiction" also requires personal jurisdiction, the Supreme Court never entertained the possibility of entirely detaching subject matter jurisdiction from the phrase's meaning.  Thus, at most the words require both personal and subject matter jurisdiction; but nothing in _Morton_ or _Blackmar_ indicates that they require anything less than an independent basis for subject matter jurisdiction.

The _Pirelli_ court's third reason states that "of competent jurisdiction" simply clarifies that litigants relying on sue-and-be-sued provisions can sue in federal courts, but not in all federal courts.  _Pirelli_, 534 F.3d at 785 (citing _Red Cross_, 505 U.S. at 256 n.8; _id._ at 267 (Scalia, J., dissenting)).  This distinction between the various types of federal courts assumes that at least one such type has original jurisdiction under the statute.  But _Pirelli_ inverts this logic by basing its finding

22

of original jurisdiction on an interpretation of the phrase in question that relies on an _a priori_ finding of original jurisdiction.    This  circular  reasoning  undermines  the construction arrived at in _Pirelli_.

Lastly, the D.C. Circuit took the view that the phrase "competent jurisdiction" confers jurisdiction on the federal district courts where it might otherwise be lost to the Court of Federal Claims by virtue of the Tucker Act.   _Pirelli_, 534 F.3d at 785 (citing _Ferguson_, 126 F.2d at 756).   However, the cited passage from _Ferguson_ does not stand for the proposition for which _Pirelli_ cites it.   The D.C. Circuit implies that the Fourth Circuit attributed the inapplicability of the Tucker Act to the phrase "competent jurisdiction," but that implication is inaccurate.    According  to  the  Fourth  Circuit,  the inapplicability of the Tucker Act was settled law, wholly apart from the sue-and-be-sued provision in question.   _Ferguson_, 126 F.2d at 756-57 ("[A]s we read recent decisions of the Supreme Court the jurisdiction of a United States District Court to entertain a suit against governmental agencies and corporations is not limited by the provisions of the Tucker Act.").

For the foregoing reasons, the Court follows the reasoning of those district courts that have rejected the application of the _Red Cross_ rule to § 1723a(a). Additionally, the Court finds that the words "of competent jurisdiction," as used in §

1723a(a), require an independent basis of subject matter jurisdiction, thus qualifying the statute's reference to the federal courts, which would otherwise grant original jurisdiction under Red Cross. Finally, the Court rejects the four-pronged rationale of Pirelli because it renders the statutory language "of competent jurisdiction" redundant and otherwise meaningless.

**Jurisdiction Based on "Practical and Procedural Concerns"**

As a final basis for federal jurisdiction, the Davises make numerous allegation of misconduct by the General District Court for Goochland County. See e.g. Opp. at 6 ("Davis alleges that the low court of Goochland has already displayed both its irregularities and its eagerness to serve the Plaintiff against Defendants."). As a result, the Davises argue that this action belongs in this Court because federal courts are "true courts of Record." Id. at 12. They caution that "an Order to Remand is equivalent to a Judgment for the Plaintiff in this situation." Id. at 10. The Davises ask this Court to exercise jurisdiction over this action as a result of the need for Federal Courts to rectify "abuses committed by lesser courts" regarding of any "procedural deficiencies in the manner in which it arrived." Id. at 12, 11. However, it is well-settled that "[t]he presumption in all cases is that the courts of the states will do what the constitution and laws of the United States require, and removals

24

cannot be effected to the courts of the United States because of fear that they will not." Chicago & A.R. Co. v. Wiggins Ferry Co., 108 U.S. 18, 24 (1883). If the Davises find ground for error in the state court's decision, their remedy is an appeal to the appropriate state court. See Defiance Water Co. v. City of Defiance, 191 U.S. 184, 191 (1903) ("If there be ground for complaint of [the state court's] decision, the remedy is by writ of error."). Accordingly, federal jurisdiction cannot be predicated on the fear that the state court will not fairly address their federal defenses or the fear that the state court is biased against them.

## CONCLUSION

For the foregoing reasons, FNMA's MOTION TO REMAND (Docket No. 4) is granted and this action will be remanded to the General District Court for Goochland County.

It is so ORDERED.

_____ /s/   REP _____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August  9 , 2013